**USA PETROLEUM CO.,**
**Plaintiff–Appellant,**

v.

**ATLANTIC RICHFIELD CO.,**
**Defendant–Appellee.**

**No. 87–5681.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1992.

Decided Aug. 12, 1992.

Alicia Rosenberg, Blecher & Collins, Los Angeles, Cal., for plaintiff-appellant.

Ronald Redcay, Arnold & Porter, Los Angeles, Cal., for defendant-appellee.

Before: ALARCON, D.W. NELSON, and REINHARDT, Circuit Judges.

D.W. NELSON, Circuit Judge:

Atlantic Richfield Co. ("ARCO") is one of the "major" oil companies; USA Petroleum Co. ("USA") is an "independent" gasoline marketer. USA alleges that ARCO and its dealers conspired to drive USA and other independents out of the retail gasoline market by agreeing to set retail gasoline prices below market levels. USA alleges that this vertical agreement to fix maximum resale prices violates section 1 of the Sherman Act, 15 U.S.C. § 1.

USA appealed from the decision of the district court granting summary judgment in favor of defendant ARCO on the antitrust claims. We reversed, holding that USA had standing to challenge ARCO's alleged vertical maximum resale price maintenance scheme. *USA Petroleum v. Atlantic Richfield Co.*, 859 F.2d 687, 697 (9th Cir.1988). The Supreme Court in turn reversed the judgment of this court, holding that a competitor does not have standing to challenge such a scheme unless the prices fixed were predatory. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339, 110 S.Ct. 1884, 1891, 109 L.Ed.2d 333 (1990). On remand, USA argues that the grant of summary judgment still must be reversed on the alternative ground that the district court wrongly dismissed USA's predatory pricing claims. We agree, and we therefore reverse the judgment of the district court and remand for further proceedings.

## I. Facts

USA filed this antitrust action in 1983, alleging that ARCO had agreed with its independent dealers to set below-market prices in the retail gasoline market in an effort to drive independent producers like USA out of business. USA alleged that ARCO's conduct violated the antitrust laws in two ways. First, an agreement to set maximum resale prices is illegal per se under section 1 of the Sherman Act, regardless of the prices set. Second, USA alleged that ARCO's prices were "predatory"[1] and constituted an attempt to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. On April 28, 1986, USA voluntarily dismissed its section 2 attempted monopolization claim because it could not show the "dangerous probability of success" necessary to prevail on that claim. USA continued to press its section 1 claim, however.

On June 30, 1986, ARCO moved for partial summary judgment on USA's section 1

---

1. A predatory price is one which is below "some appropriate measure of cost." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 nn. 8–9, 106 S.Ct. 1348, 1355 nn. 8–9, 89 L.Ed.2d 538 (1986).

claim. ARCO offered two arguments in support of this motion. First, it argued that USA had no standing to assert the claim because it could not suffer antitrust injury from a conspiracy to set maximum prices unless those prices were predatory. Second, it argued that USA could not prove ARCO's prices were predatory because it could not show a dangerous probability of successful monopolization. At no time did ARCO controvert USA's claim that ARCO had set its prices below cost. USA responded to the motion for summary judgment by asserting that it did not need to show either antitrust injury or a dangerous probability of success. The district court granted ARCO's motion for summary judgment. It held that, "[e]ven assuming that USA can establish a vertical conspiracy to maintain low prices, it cannot satisfy the 'antitrust injury' requirement of Clayton Act § 4, without showing such prices to be predatory." It held that USA could not show that ARCO's prices were predatory because ARCO did not possess market power and therefore was unlikely to succeed in monopolizing the market.

We reversed the district court. We held that USA did have standing to challenge a conspiracy to set maximum prices under section 1. *USA Petroleum*, 859 F.2d at 689. Because such a conspiracy is per se illegal regardless of whether the price is predatory, we did not reach the issue of whether ARCO had engaged in predatory pricing. The Supreme Court in turn reversed. The Court held that "[a]lthough a vertical, maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust injury *unless it results in predatory pricing.*" *Atlantic Richfield*, 495 U.S. at 339, 110 S.Ct. at 1891 (emphasis added). The Court then remanded the case to this court for "proceedings consistent with this opinion." *Id.* at 346, 110 S.Ct. at 1895.

## II. Jurisdiction

■ At the outset, ARCO argues that we should not reach the question of whether ARCO engaged in predatory pricing for two reasons. First, ARCO claims that USA explicitly abandoned its predatory

pricing claims before the district court. This claim is belied by the record. In its complaint, USA alleged, among others, the following violations of section 1: "Arco and its co-conspirators have organized a resale price maintenance scheme," "Arco and its co-conspirators have implemented severe and predatory price cuts," and "Arco has extended to its co-conspirators and others prices on gasoline which are below cost. These prices have facilitated the maintenance of retail prices at artificially low and uncompetitive levels." In addition, USA also alleged resale price maintenance and predatory pricing claims under section 2 of the Sherman Act. USA later agreed to dismiss its section 2 claims, leaving only its section 1 claims to be disposed of by the court. Among those section 1 claims remaining for resolution were USA's allegations of a predatory pricing conspiracy.

In granting ARCO's motion for summary judgment, the district court reasoned as follows: "It seems to me that there would only be ... an antitrust injury if the defendant sought to establish predatory prices, otherwise there would only be a conspiracy to compete.... And the definition of predatory prices, as I understand it from the papers, is that—one which creates a dangerous probability of successful monopoly." In response, counsel for USA repeatedly argued that dangerous probability of success applied only to section 2 claims, not the section 1 predatory pricing claim before the court.

It is clear from the record that the district court considered USA's section 1 predatory pricing claims. The court disposed of USA's claims on two grounds. First, as to all claims *except* the predatory pricing claims, it found that USA lacked standing because it could not prove antitrust injury. Second, as to the predatory pricing claims, it found that USA could not prove dangerous probability of successful monopolization. Thus, contrary to ARCO's suggestion, USA asserted its section 1 predatory pricing claims before the district court, and the district court in fact resolved those claims on the merits.

■ ARCO's second argument is that the Supreme Court's decision in this case forecloses any further consideration by this court. A review of the Ninth Circuit and Supreme Court opinions reveals otherwise. In its original appeal to this court, USA argued both that it had standing to bring its resale price maintenance claims and that the district court erred in dismissing its predatory pricing claims. Indeed, it spent several pages in its 1987 opening brief discussing the predatory pricing issue. *See* Appellant's Brief at 7, 15–20 ("By requiring USA to show ... a dangerous probability of successful monopolization before ARCO's vertical price-fixing could be anti-competitive and cause USA antitrust injury, the district court contravened Supreme Court authority and impermissibly engrafted Section 2 elements onto USA's Section 1 price-fixing case."); Appellant's Reply Brief at 15–23.[2] We reached only the antitrust injury issue, however: "The question on appeal is whether *in the absence of proof of predatory pricing* a competitor can recover damages because of a maximum resale price maintenance agreement." *USA Petroleum,* 859 F.2d at 689 (emphasis added). We concluded that USA did have standing to bring its maximum resale price maintenance claims; we therefore reversed and remanded the case without reaching the predatory pricing issue.[3]

In reversing, the Supreme Court held that "[a]lthough a vertical, maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a com-petitor antitrust injury *unless it results in predatory pricing." Atlantic Richfield,* 495 U.S. at 339, 110 S.Ct. at 1891 (emphasis added). Far from resolving the question of whether predatory pricing had occurred here, the Supreme Court expressly did not reach that issue. Noting that the Ninth Circuit had not reached that issue, the Court said: "For purposes of this case we likewise assume that petitioner's pricing was not predatory in nature." *Id.* at 333 n. 3, 110 S.Ct. at 1888 n. 3. Neither the Ninth Circuit nor the Supreme Court, therefore, ever resolved the predatory pricing claim USA raised.

The dissent offers two additional reasons not to reach the predatory pricing issue in this case. First, the dissent finds in the Supreme Court's opinion a "clear direction ... to this court to enter an order affirming the district court." Dissent, at 1076–77. The Supreme Court said no such thing. Instead, it explicitly remanded the case to this court for further "proceedings consistent with this opinion." 495 U.S. at 346, 110 S.Ct. at 1895. This mandate is completely consistent with the Court's decision on the merits, which was that USA could suffer antitrust injury, but only if ARCO's prices were predatory. The Court left open the same question we had previously left unresolved—whether ARCO's prices were predatory in this case.

Second, the dissent argues that we should reject USA's predatory pricing claim

---

**2.** In light of this, it is difficult to understand the dissent's apparent assertion that USA did not raise the predatory pricing issue in its first appeal to this court. *See* dissent, at 6–8. Indeed, ARCO clearly believed that USA had raised the issue; it devoted more than ten pages of its brief to rebutting an argument the dissent now claims was never made. *See, e.g.,* Appellee's 1987 Brief at 5–6, 9–10 ("[T]he district court correctly dismissed USA's Sherman Act § 1 claim, even assuming that USA could have proved that ARCO and ARCO-brand dealers conspired to depress the dealers' prices and that USA suffered diminished profits as a result of the depressed prices."), 35–44 ("The district court's decision is predicated on a third basic principle of antitrust law. Predatory pricing violative of the antitrust laws occurs only where there is a dangerous probability of successful monopolization.... Since ARCO admittedly posed no threat of mo-nopolization, summary judgment dismissing the Section 1 claim was proper.").

**3.** The predatory pricing conspiracy alleged in this case is merely one type of a vertical maximum price fixing agreement. A vertical maximum price fixing agreement requires that ARCO and its downstream purchasers have agreed to set resale prices at or below *any* level. A vertical conspiracy to predate requires that ARCO and its downstream purchasers have agreed to set resale prices below some appropriate measure of cost. Thus, proof of a vertical predatory pricing conspiracy in this case would necessarily entail proof of a maximum resale price maintenance agreement, so it was unnecessary to reach the predatory pricing issue if USA could prevail on its vertical maximum price fixing claim.

on our own motion because USA presented no proof that ARCO's prices were predatory. It is true that USA did not offer proof that ARCO had priced below cost, but that is because ARCO never put that claim in issue. USA's complaint alleged that ARCO had priced below cost. ARCO's motion for summary judgment did not controvert that claim.[4] Instead, ARCO sought summary judgment on the predatory pricing allegation solely on the grounds that USA could not prove dangerous probability of success. The district court granted summary judgment on that basis alone. Because ARCO never argued in its motion for summary judgment that its prices were above cost, USA was under no obligation to come forward with evidence proving that element of its case. It is axiomatic that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To conclude otherwise would be to hold that a defendant could put the plaintiff to its proof on every element of its claim before trial, merely by invoking the magical words "summary judgment."

In short, USA was given no opportunity before the district court to prove that ARCO had priced predatorily, because the district court believed that USA was required to and could not establish dangerous probability of success. USA properly challenged the district court's ruling on its initial appeal to this court, devoting five pages of its brief to the issue. Because of our resolution of the case, we did not reach that issue. To refuse to reach it now, as the dissent would have us do, would be to deny USA *any* opportunity to appeal the district court's decision on predatory pricing because of our earlier erroneous decision in USA's favor on the antitrust injury issue. Nothing in the Supreme Court's mandate or the law of summary judgment compels such a perverse result.

Because the Supreme Court has held that USA has standing only to pursue a predatory pricing claim, we must now decide whether the district court properly dismissed that predatory pricing claim.

### III. Standard of Review

We review the district court's grant of summary judgment de novo. *Thurman Indus., Inc. v. Pay 'n Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir.1989). We must determine whether, viewing the evidence in the light most favorable to USA, there are genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.*

### IV. Section 1 Predatory Pricing Claim

■ The antitrust laws contain a fundamental distinction between unilateral and concerted action. Unilateral action is governed by section 2 of the Sherman Act, and is illegal only if it constitutes actual or threatened monopolization. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767, 104 S.Ct. 2731, 2739, 81 L.Ed.2d 628 (1984). Concerted action, by contrast, falls within section 1 of the Sherman Act, and is judged more sternly. Many categories of concerted action are illegal per se—that is, without regard to their market effect. *Id.* at 767–68, 104 S.Ct. at 2740.

■ In this case, USA alleged concerted action in violation of section 1—namely, a conspiracy between ARCO and its dealers to fix maximum prices above which the dealers could not resell ARCO gasoline. Vertical agreements to fix prices are illegal per se, regardless of whether the prices so fixed are predatory. *Atlantic Richfield*, 495 U.S. at 335, 110 S.Ct. at 1889; *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 724, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988); *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775

---

**4.** Indeed, ARCO appears to concede the issue in its own motion for summary judgment: "[We] proceed[ ] from the assumption that USA could prove that Atlantic Richfield set the retail prices of the competing distributors or dealers at levels lower than would have prevailed but for vertical conspiracy.... [T]he allegedly conspiratorially low prices, *even if illegal,* did not cause USA injury of the type that the antitrust laws were intended to prevent." (emphasis added).

(1984); *Albrecht v. Herald Co.*, 390 U.S. 145, 153, 88 S.Ct. 869, 873, 19 L.Ed.2d 998 (1968). Because the predatory pricing conspiracy alleged in this case is such an agreement to fix prices, it must be evaluated under the per se rule. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (horizontal conspiracy to predate treated as a per se violation); *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 342–48, 102 S.Ct. 2466, 2472–75, 73 L.Ed.2d 48 (1982) (vertical and horizontal agreements to set prices are illegal per se regardless of the price set); P. Areeda & H. Hovenkamp, Antitrust Law ¶ 711.2, at 616 (Supp.1991) (same); Jorde & Lemley, *Summary Judgment in Antitrust Cases: Understanding Monsanto and Matsushita*, 36 Antitrust Bull. 271, 287 (1991) ("Section 2 [predatory pricing] cases are subject to the rule of reason, which means that a defendant will have a chance to defend its conduct as procompetitive. Because the plaintiffs :.. alleged a *conspiracy* to price below cost, however, their claim arises under section 1 and is subject to a per se rule.") (emphasis added).

■ In this case, the district court rejected USA's predatory pricing claim because it held that USA could not prove that ARCO had a dangerous probability of successful monopolization. The district court erred in applying the "dangerous probability of success" standard in a per se section 1 case. Dangerous probability of success is an element of an attempted monopolization claim under section 2. *See Wm. Inglis & Sons v. ITT Continental Baking Co.*, 668 F.2d 1014, 1027 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 58, 74 L.Ed.2d 61 (1982); E. Fox & L. Sullivan, Antitrust Law 162 (1989). It has never been required, however, to prove a section 1 claim. Indeed, the Supreme Court has on several occasions expressly rejected the

very argument ARCO makes here. *See, e.g., Copperweld*, 467 U.S. at 767–68, 104 S.Ct. at 2740 ("Section 1 of the Sherman Act, in contrast [to section 2], reaches unreasonable restraints of trade effected by a 'contract, combination, or conspiracy'.... [I]t is not necessary to prove that concerted activity threatens monopolization."); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 224–25, 60 S.Ct. 811, 844–45, 84 L.Ed. 1129 (1940) ("The group making [price-fixing] agreements may or may not have power to control the market.... Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy.").

■ Further, this circuit has rejected the attempt to import the dangerous probability test into section 1 predatory pricing cases. For example, in *Western Concrete Structures v. Mitsui & Co.*, 760 F.2d 1013, 1016–18 (9th Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985), we distinguished between the elements required to prove a section 1 predatory pricing claim and those required to prove a section 2 claim. There, we said that predatory pricing under section 2 "differs from section 1, which requires a conspiracy, but does not require monopolizing or attempting to monopolize." *Id.* at 1017. Indeed, this is the basic distinction between a section 1 claim and a section 2 claim. A section 1 plaintiff is required to prove the existence of a conspiracy.[5] Once the plaintiff has done so, however, it is relieved of the burden of proving actual or potential monopolization.

We have found no case in this circuit or any other that has applied the dangerous

---

**5.** In *Matsushita,* the plaintiffs alleging the existence of a predatory pricing conspiracy sought to infer the existence of the conspiracy itself from ambiguous evidence. The Court rejected this attempt, holding that to survive summary judgment, "a plaintiff seeking damages for a violation of section 1 must present evidence that tends to exclude the possibility that the alleged

conspirators acted independently. Respondents in this case, in other words, must show that the inference of conspiracy is reasonable ..." 475 U.S. at 588, 106 S.Ct. at 1357 (citation omitted). Unlike the defendants in *Matsushita*, ARCO has not contested USA's allegation that it conspired with its dealers to set prices.

probability requirement to conduct which is illegal per se under section 1. We reject ARCO's argument that dangerous probability should be required in this case. To require such a showing would be tantamount to saying that a conspiracy to predate violates section 1 only if it also violates section 2. Such a holding would in essence abolish the long-standing rule that a predatory pricing conspiracy is illegal without regard to its actual or potential market effect. The Supreme Court has reaffirmed that rule in this very case, *see Atlantic Richfield*, 495 U.S. at 335, 110 S.Ct. at 1889, and we have no occasion to second-guess that judgment.[6]

## IV.   Conclusion

The district court erred in requiring that USA prove a dangerous probability of successful monopolization in order to proceed to trial on its section 1 predatory pricing claim. It did not consider whether USA could demonstrate that ARCO had in fact engaged in predatory pricing—that is, pricing below cost—in this case. On remand, USA is entitled to attempt to prove that ARCO conspired to set predatory prices. The judgment of the district court is REVERSED and REMANDED.

ALARCON, Circuit Judge, dissenting:

I respectfully dissent.

I would carry out the mandate of the United States Supreme Court and enter a brief order affirming the district court's order.

## I.

### PREFATORY STATEMENT

The district court granted summary judgment in favor of the Atlantic Richfield Company (ARCO). It held that the USA Petroleum Company (USA) was not entitled

to damages for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, because it had failed to demonstrate "antitrust injury."

On October 7, 1988, Judges Nelson and Reinhardt reversed "the decision of the district court and remand[ed] the case for further proceedings consistent with this opinion." *USA Petroleum Co. v. Atlantic Richfield Co.*, 859 F.2d 687, 697 (9th Cir. 1988). Presumably the majority's somewhat inscrutable mandate directed the district court to proceed to trial. The majority appeared to have ruled that USA demonstrated "antitrust injury," entitling it to recover damages if it can meet the requisite standard of persuasion at trial. *Id.*

On May 14, 1990, the Supreme Court reversed this court's decision. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). The Court's holding is stated in words that are free from ambiguity.

Respondent argues that, as a competitor, it can show anti-trust injury from a vertical conspiracy to fix maximum prices that is unlawful under § 1 of the Sherman Act, even if the prices were set above predatory levels. In addition, respondent maintains that any loss flowing from a *per se* violation of § 1 automatically satisfies the antitrust injury requirement. We reject both contentions and hold that respondent has failed to meet the antitrust injury test in this case. We therefore reverse the judgment of the Court of Appeals.

*Id.* at 335, 110 S.Ct. at 1889.

Thus, the Supreme Court reversed the judgment of the majority of this panel that the district court erred in holding that USA could not recover damages under Section 1 of the Sherman Act for failure to show "antitrust injury." Notwithstanding the clear direction of the Supreme Court to this

---

**6.** Indeed, the rule urged on us by ARCO would be perverse. *Atlantic Richfield* makes it clear that agreements to set maximum resale prices are illegal without proof of a dangerous probability of monopolization. 495 U.S. at 342, 110 S.Ct. at 1893. To rule in ARCO's favor in this case would require us to conclude that agreements to set predatory prices are not illegal

unless dangerous probability is proven. This would produce the rather remarkable result that *all* agreements to set maximum prices *above* cost are illegal, while only some agreements to set maximum prices *below* cost are illegal. We can conceive of no reason to believe the Supreme Court intended such a result when it decided *Atlantic Richfield*.

court to enter an order affirming the district court, on November 13, 1991, USA filed a document styled as a "Motion for Clarification On Remand From Supreme Court" in which it boldly requested this court to "*reverse* the district court's grant of summary judgment." For reasons that find no support in the Supreme Court's decision in this matter, the majority has declined to enter an order affirming the district court's dismissal of this action for failure to demonstrate antitrust injury, and again reversed the order granting partial summary judgment on the Section 1 claim. I cannot join in the majority's opinion. My oath of office requires me to follow the mandate of the Supreme Court.

## II.

### THE DISTRICT COURT MUST BE AFFIRMED BECAUSE USA FAILED TO INTRODUCE EVIDENCE OF PREDATORY PRICING

USA has asked this court to "clarify" the Supreme Court's mandate that we affirm the grant of summary judgment in this action because USA failed to demonstrate antitrust injury by reversing the judgment of the district court. USA seeks to reverse an issue it lost in the district court because it failed to present any evidence to demonstrate that ARCO's prices were predatory. A recitation of the procedural history of this case will readily demonstrate that this court should promptly terminate USA's clever gamesmanship and enter a final order in this case that upholds the district court's wise analysis of each issue, and respects the mandate of the Supreme Court.

### A. *Proceedings Before The District Court*

USA alleged in its amended complaint that in violation of Section 1 of the Sherman Act, "ARCO and its co-conspirators have implemented severe and predatory price cuts." After almost three years of exhaustive discovery covering a three-year period, ARCO filed a motion for a partial summary judgment on March 31, 1986. ARCO requested dismissal of USA's Section 1 and Section 2 claims on the ground

that USA could not satisfy the "antitrust injury" requirement of Section 4 of the Clayton Act because USA had failed to show that its prices were predatory. On April 28, 1986, USA entered into a stipulation for an order dismissing its Section 2 claim. On July 25, 1986, after the dismissal of its Section 2 claim, USA filed a document entitled "Statement of Genuine Issues". USA stated the only issues in dispute were

> "1. Whether ARCO has engaged in a vertical price fixing conspiracy with ARCO-branded distributors and ARCO-branded dealers to fix prices at artificially low levels?
>
> 2. Whether ARCO's vertical price fixing conspiracy has caused USA injury and in what amount?"

USA did not contend that predatory pricing was a genuine issue of fact in dispute. USA relied instead on its theory that antitrust injury can be shown solely by proof of an unlawful conspiracy to fix below market retail gasoline prices. Thus any factual issue concerning predatory pricing was abandoned by USA *prior* to the hearing on ARCO's motion for a partial summary judgment on the Section 1 claim.

A hearing on ARCO's motion for a summary judgment on the Section 1 claim was conducted on October 14, 1986. During his argument in opposition to the motion, USA's counsel conceded that it could not prove predatory pricing on the remaining Section 1 claim "even by the most liberal standard". USA accurately described the essence of the October 14, 1986 proceedings in its opening brief before this court dated July 6, 1987.

> The district court granted ARCO's motion on February 25, 1987. (CR 100, 103.) The court held that ARCO's vertical conspiracy to fix below-market prices was procompetitive and therefore could not produce the kind of injury that the antitrust laws were intended to prevent. The court ruled USA was required to prove that the conspiracy between ARCO and its dealers fixed "predatory" prices and that ARCO had a dangerous proba-

bility of successfully monopolizing the market in order to satisfy the antitrust injury requirement of *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690 [50 L.Ed.2d 701] (1977). *Plaintiff,* already having abandoned its Section 2 Sherman Act claims, *offered no proof on predatory pricing* or dangerous probability of monopolization. The Court entered judgment for ARCO under Fed.R.Civ.P. 54(b). (CR 100, 103.) USA appeals from that judgment.

(emphasis added).

Based on the uncontroverted facts, the district court concluded that USA had failed to make a showing that ARCO's prices were predatory. In its order dismissing the Section 1 claim, the district court summarized its legal conclusion as follows:

> Even assuming that the plaintiff can establish a *vertical conspiracy to maintain low prices,* the plaintiff cannot satisfy the "antitrust injury" requirement of Clayton Act § 4, without showing such prices to be predatory.

As noted above, USA offered no evidence that the prices were predatory.

Contrary to the majority's conclusion at page 1071, the record unmistakably demonstrates that USA expressly abandoned its predatory pricing claim before the district court. USA offered no evidence of predatory pricing. USA represented to the district court that the only genuine issues of material fact in dispute to be decided on summary judgment were whether ARCO had engaged in a conspiracy to fix prices below market level; and, if so, whether USA was injured by this conduct.

B. *Issue On Appeal To The Ninth Circuit*

On the first page of its opening brief before this court, under the heading "Statement Of The Issue" USA represented as follows:

> "The *sole issue* is whether USA Petroleum Company's lost sales and reduced profits from the defendant's *per se* unlawful resale price maintenance conspiracy to fix artificial, below-market retail gasoline

prices constitutes antitrust injury." (emphasis added). On page 5 of its opening brief, USA summarized the issue raised by ARCO's partial motion for a summary judgment regarding the Section 1 claim as follows:

> Even given the existence of the unlawful conspiracy and its conceded effect on retail gasoline prices, ARCO contended that USA, a competitor, could not suffer antitrust injury from this vertical price-fixing scheme.

Judges Nelson and Reinhardt accepted USA's statement that it had presented a single issue for review. The majority in *its* first opinion in this matter, correctly identified the issue presented by USA as follows:

> The question on appeal is whether in the absence of proof of predatory pricing a competitor can recover damages because of a maximum resale price maintenance agreement. Specifically, we must decide whether a competitor's injuries resulting from vertical *non-predatory,* maximum price fixing fall within the category of "antitrust injury."

859 F.2d at 689. (emphasis added).

The majority's characterization of the prices fixed by ARCO as "nonpredatory" is supported by the record and USA's candid admission that it "offered no proof of predatory pricing." Appellant's Opening Brief at 6. In reversing the dismissal of the Section 1 claim, the majority concluded that "the purposes and policies of the antitrust laws are best effectuated by recognizing the 'standing' of competitors to enforce the antitrust laws against price-fixing conspiracies." 859 F.2d at 697.

The majority refers the reader to several pages of USA's opening and reply briefs in support of its conclusion that "USA was given no opportunity before the district court to prove that ARCO had priced predatorily...." Majority Opinion at 1074. Because anyone reading these opinions who is not a party or a member of this court has no ready access to USA's briefs, I have attached each of the pages from the appellant's briefs cited by the majority as an appendix to this dissent.

I have read the pages cited by the majority. Nowhere in its briefs does USA ask this court to reverse the judgment because it was not given an opportunity to prove that ARCO's prices were predatory. Clearly, USA could not do so because of its judicial admission before the district court that it could not prove predatory pricing under the most liberal standard. Nowhere in its briefs does USA point to any ruling by the district court that prevented it from presenting evidence of predatory pricing. Thus, the record does not support the Majority's bald assertion that the district court denied USA the opportunity to present evidence of predatory pricing. As noted above, USA conceded in its opening brief at page 6 that it "offered no proof on predatory pricing *or* dangerous probability of monopolization." (emphasis added). It was only after the Supreme Court rejected USA's argument that it could demonstrate antitrust injury by proof of a non-predatory vertical, maximum price-fixing scheme, that USA invented its spurious second issue. As discussed above on page 1078 of this dissent, prior to its defeat before the Supreme Court, USA informed this court on page 1 of its brief that the "sole issue" raised in this appeal concerned its contention that ARCO's *"per se* unlawful resale price maintenance conspiracy to fix artificial, below-market retail gasoline prices constituted antitrust injury." I would affirm the district court precisely because USA was *not* denied the opportunity to present evidence of predatory pricing.

In its petition for a rehearing, ARCO characterized the question presented by USA's appeal as follows: "The majority and dissenting opinions agree that [this] appeal presents the single issue, 'whether a competitor's injuries resulting from vertical *non-predatory,* maximum price fixing fall within the category of 'antitrust injury.'" USA, in its opposition to the petition for a rehearing did not argue that ARCO's recitation of the sole question before this court was erroneous.

In footnote 5 of its response to the petition for a rehearing, USA states that, "ARCO's suggestion that the *only* anticompetitive effect of maximum vertical price-fixing in the setting of a predatory price is wrong. The Supreme Court has consistently condemned *all* price fixing because it artificially distorts the competitive process." This argument demonstrates USA's unyielding adherence to its mistaken notion that it was not required to show predatory price fixing to demonstrate antitrust injury.

## C. *The Issue Presented To The Supreme Court*

The Supreme Court granted certiorari to resolve the sole issue raised in USA's appeal to this court. Justice Brennan framed the issue before the Court as follows: "This case presents the question whether a firm incurs an 'injury' within the meaning of the antitrust laws when it loses sales to a competitor charging *non-predatory* prices pursuant to a vertical, maximum-price-fixing scheme." 495 U.S. at 331, 110 S.Ct. at 1887 (emphasis added).

The Court summarized the district court's reasoning as follows:

> The District Court granted summary judgment for ARCO on the § 1 claim. The court stated that "[e]ven assuming that [respondent USA] can establish a vertical conspiracy to maintain low prices, [respondent] cannot satisfy the 'antitrust injury' requirement of Clayton Act § 4, without showing such prices to be predatory." App. to Pet. for Cert. 3b. The court then concluded that respondent could make no such showing of predatory pricing because, given petitioner's market share and the ease of entry into the market, petitioner was in no position to exercise market power.

*Id.* at 333, 110 S.Ct. at 1888.

The Supreme Court reversed this court's judgment. *Id.* at 335, 110 S.Ct. at 1889. The court rejected USA's argument that:

> [I]t is inappropriate to require a showing of predatory pricing before antitrust injury can be established when the asserted antitrust violation is an agreement in restraint of trade illegal under § 1 of the

Sherman Act, rather than an attempt to monopolize prohibited by § 2.

*Id.* at 338, 110 S.Ct. at 1891.

The Court held that "[a]lthough a vertical maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust injury unless it results in predatory pricing." *Id.* at 339, 110 S.Ct. at 1891–92. The Court's concluding paragraph reads as follows: "Respondent has failed to demonstrate that it has suffered any antitrust injury. The allegation of a *per se* violation does not obviate the need to satisfy this test." *Id.* at 346, 110 S.Ct. at 1895. The principle announced by the Court in this case is free from doubt. Where, as here, a competitor failed to present any evidence of predatory pricing, the district court must dismiss a Section 1 claim even though the evidence shows an illegal maximum-price-fixing conspiracy.

Having determined that the majority had erred in reversing the district court's dismissal of the Section 1 claim, the Court reversed the judgment of this court and remanded "for proceedings consistent with this opinion." *Id.* In light of USA's concession in its opening brief before this court that it had not presented any evidence of predatory pricing, this court was compelled by the Supreme Court's mandate to enter a simple order stating: "In conformance with the mandate of the Supreme Court in this matter, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the judgment of the district court is affirmed."

### III.

### THE MOTION FOR CLARIFICATION

The Supreme Court announced its decision in this matter on May 14, 1990. On November 13, 1991, prior to any proceedings in this matter consistent with the Court's mandate, USA filed a document labelled as a "Motion for Clarification on Remand from the Supreme Court." Since no action has been taken on the Court's mandate by this court, there was no new order or judgment from this court that required clarification. No rule was cited

by USA authorizing a "clarification" by this court of the import of the Supreme Court's mandate. This court is in no position to "clarify" a decision of the Supreme Court. USA's request for a clarification of the remand order should have been directed to the Supreme Court.

USA has successfully persuaded my distinguished colleagues that it is entitled to a determination by this court on the question whether the record shows that the district court erred in determining that USA had failed to present evidence of predatory pricing. The majority has concluded that it has the authority to reverse the district court once again, notwithstanding the mandate of the Supreme Court, because this court did not reach the predatory pricing issue in its first opinion.

The majority had no authority to reach the predatory pricing issue raised in USA's amended complaint. USA abandoned the issue in its statement of genuine issues in dispute dated July 25, 1986. During the October 14, 1986 proceedings on ARCO's partial motion for a summary judgment regarding the Section 1 claim, USA's counsel, having stipulated to the dismissal of the Section 2 claim, confirmed to the district court that:

> the first thing we need to focus on is the fact that *we are left with a singular claim*, the essence of which is that ARCO formed a combination and conspiracy with its dealers to—in the language of the Supreme Court—to engage in resale price maintenance, to fix vertically the price at which the dealers would resell.

(emphasis added). When the court asked USA's counsel whether he was required to show predatory pricing, Mr. Blecher replied: *"All I have to show in my view is price-fixing.* Price-fixing is in and of itself illegal." (emphasis added). Mr. Blecher informed the court that he could not demonstrate on the evidence before the court that the price was predatory. Mr. Blecher argued that the court was not required to find that "the fixed price is predatory in order to hold the defendant liable." As noted above, USA's concession in its open-

ing brief that it offered no proof of predatory pricing dispels any reasonable doubt regarding its decision to rely solely on the *per se* price-fixing violation as sufficient evidence of antitrust injury.

The majority concludes that the district court "wrongly dismissed USA's predatory pricing claims." Majority Opinion at 1071. I can find no principled basis for this conclusion in the record. ARCO offered evidence that its prices were not predatory in support of its partial motion for a summary judgment on the Section 1 claim. USA informed the district court and this court that it offered no evidence of predatory pricing. Notwithstanding these admirable concessions, my colleagues have somehow persuaded themselves that the district court erred in holding that USA's Section 2 claim must be dismissed because no evidence of predatory pricing was presented.

In response to ARCO's argument that we should not consider USA's predatory pricing theory because it was abandoned in the district court, the majority cites several portions of the amended complaint in which USA referred to predatory pricing. Majority Opinion at 1071–72. The majority has overlooked the fact that subsequent to the filing of the amended complaint, ARCO filed a motion for a partial summary judgment seeking the dismissal of the Section 1 claim. The Supreme Court has instructed that once a motion for a summary judgment has been filed, the plaintiff must present evidence to support the factual allegations in the complaint. *Lujan v. Defenders of Wildlife*, — U.S. —, —, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). The Court set forth this principle in the following passage:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim," [*Lujan v.*] *National Wildlife Federation, supra,* 497 U.S. [871], at 889, 110 S.Ct. [3177], at 3189 [111 L.Ed.2d 695 (1990)]. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(e) which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial," *Gladstone, [Realtors v. Village of Bellwood], supra,* 441 U.S. [91], at 115, n. 31, 99 S.Ct. [1601], at 1616, n. 31 [60 L.Ed.2d 66 (1979)].

*Id.*

USA has acknowledged that it failed to present in the district court, any evidence of predatory pricing. In holding that the district court erred in granting partial summary judgment on the Section 1 claim, because of its view that there was no genuine issue of fact in dispute concerning predatory pricing, the majority has failed to apply the foregoing principles.

The majority has concluded that the district court applied the wrong standard in evaluating the predatory pricing claim in USA's amended complaint. We need not decide whether the district court was mistaken in stating that the proper test for the sufficiency of the evidence of predatory pricing is the dangerous probability of successful monopolization because USA offered no evidence of predatory pricing. Thus, the majority's discussion of the proper standard to be applied in a Section 1 case to evaluate evidence of predatory pricing is an academic exercise that is beyond our Article III jurisdiction. Resolution of that interesting question must await a private antitrust case in which the plaintiff offered proof of predatory pricing. None was offered in this case.

Furthermore, as noted by the majority, it is boilerplate law that we must review a district court's order granting or denying summary judgment independently, without deference to the district court's legal rulings. Even if it were possible to ignore USA's statement in its opening brief that the sole issue before this court is whether ARCO's unlawful conspiracy to fix prices is sufficient to show antitrust injury without

proof of predation, we would still be required to determine for ourselves whether the evidence presented by USA raised a genuine issue of material fact on the question of predatory pricing. In performing this task, we would be required to ignore the trial court's legal pronouncements and search the record for evidence of predatory pricing. Performance of that task would be simple in this case because of USA's admission that it offered no proof of predatory pricing in response to the partial motion for a summary judgment to dismiss the Section 1 claim. Thus, even the majority's present creative reading of USA's opening brief, which followed the reversal of its original opinion in this case by the Supreme Court, should compel it to *affirm*, and not reverse the district court's order granting partial summary judgment on the Section 1 claim.

## IV.

## PROHIBITION AGAINST PIECEMEAL APPEALS

Under the law of this circuit, a party cannot assert one theory before this court and, upon losing, return again and assert an entirely different theory. In *Nguyen v. United States*, 792 F.2d 1500 (9th Cir.1986), we relied on the following principle in reversing an order granted upon a new theory that was inconsistent with our prior mandate:

> Much of the value of summary judgment procedure in the cases for which it is appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*Id.* at 1503 (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir.1967)).

In this matter, USA fought the good fight before this court for a ruling that proof of a conspiracy to fix maximum prices was sufficient to demonstrate antitrust injury without proof that the prices were predatory. Its novel theory proved successful with a majority of this court. The Supreme Court has rejected this argument. Having lost that battle, USA now seeks to return to the district court to challenge ARCO's motion for partial summary judgment on a factual theory it expressly abandoned because it offered no proof of predatory pricing.

## CONCLUSION

I would not permit a litigant to return to the district court to pursue a theory asserted in its complaint that it deliberately abandoned in order to test the validity of a discrete argument in its opposition to a partial motion for a summary judgment. Our courts are too burdened with meritorious claims to permit skillful counsel to abuse their right of appeal by offering up successive claims until they finally find one that will persuade at least two judges of this court. This tactic is contrary to the mandate of the Supreme Court in this case and violates this circuit's prohibition against piecemeal review of motions for a summary judgment based on theories that could have been presented previously.

USA candidly admits it offered no evidence of predatory pricing in opposition to ARCO's partial motion for a summary judgment. Instead of rejecting USA's argument on the Section 1 claim that the district court erred in granting summary judgment precisely because USA failed to meet its burden of presenting facts demonstrating that it could prove the allegations in its complaint, the majority has concluded that the district court must conduct further proceedings on USA's predatory pricing claims. The majority gives no clue to the district court as to the nature of these proceedings. Must the district court permit USA to now attempt to offer proof of predatory pricing it concedes it failed to present at the summary judgment proceedings? Does the majority's reversal of the partial summary judgment order dismissing the Section 1 claim mean that that issue must now be presented to a trier of fact notwithstanding USA's failure to present any evidence raising a genuine issue of

material fact concerning the allegations in its complaint that ARCO's prices were predatory?

The Supreme Court ruled in a landmark decision that Judge Nelson and Judge Reinhardt erred in holding that USA had demonstrated antitrust injury on the record presented to the district court. The same judges, after again reviewing the same record, have refused to carry out the Supreme Court's mandate. Once again, the majority has allowed itself to be guided into the same error. I cannot join its number.

### APPENDIX TO DISSENT

Page 7 of USA's opening brief reads as follows:

The Supreme Court has unequivocally held that price-fixing is anticompetitive regardless of the level of the fixed price or the defendant's market power. By requiring USA to show that ARCO fixed predatory prices and had a dangerous probability of successful monopolization before ARCO's vertical price-fixing could be anticompetitive and cause USA antitrust injury, the district court contravened Supreme Court authority and impermissibly engrafted Section 2 elements onto USA's Section 1 price-fixing case.

These mistakes led the district court inexorably to conclude that USA's injury was attributable only to legitimate price competition (in the form of *per se* unlawful price-fixing), and was not antitrust injury. The district court's decision effectively repeals the *per se* rule against maximum resale price-fixing. Once maximum resale price-fixing is deemed *per se* anticompetitive, it cannot constitute procompetitive conduct for purposes of determining antitrust injury. Antitrust injury was not intended as a vehicle for rewriting the substantive antitrust laws.

The district court's erroneous decision must be reversed. Given that price-fixing, without more, is *per se* anticompetitive, USA's lost sales and reduced profits resulting directly from selling gasoline in competition with fixed instead of market-determined prices constitutes antitrust injury.

USA's injury reflects the very market distortion the

Pages 15–20 of USA's opening brief read as follows:

  B. *The Supreme Court Has Specifically Held That Anticompetitive Conduct Condemned Under Sherman Act § 1 Does Not Require Threatened Monopolization.*

The district court's second error was to hold, as argued by ARCO, that a Section 1 *per se* offense is anticompetitive and causes antitrust injury only when the defendants have a dangerous probability of successfully monopolizing the market. (CR 83: Exhibit 1 at 35; CR 91: 3.)

The Supreme Court has specifically rejected the court's theory. In *Socony–Vacuum,* the Court expressly held that price-fixing is anticompetitive even absent market power, and rejected a requirement of actual or threatened monopoly power. 310 U.S. at 224, 60 S.Ct. at 844–45; *see also United States v. McKesson & Robbins, Inc.,* 351 U.S. 305, 309–10, 76 S.Ct. 937, 940 (1956). The Court in *Socony–Vacuum* acknowledged that:

Price-fixing agreements may or may not be aimed at complete elimination of price competition. The group making those agreements may or may not have power to control the market. But the fact that the group cannot control the market prices does not necessarily mean that the agreement as to prices has no utility to the members of the combination. The effectiveness of price-fixing agreements is dependent on many factors, such as competitive tactics, position in the industry, the formula underlying price policies. Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy.

*Id.* at 224–25, n. 59, 60 S.Ct. at 845 n. 59. (footnote omitted)

The district court's ruling contravenes the Sherman Act's statutory scheme re-

quiring different degrees of anticompetitive effect for concerted conduct and single firm activity. Whereas Section 1 deems anticompetitive conspiracies in restraint of trade, Section 2 condemns as anticompetitive only single firm conduct threatening monopolization. *Greyhound Computer Corp. v. International Business Machines Corp.*, 559 F.2d 488, 504 (9th Cir.1977), *cert. denied*, 434 U.S. 1040, 98 S.Ct. 782 (1978); *H & B Equipment Co. v. International Harvester Co.*, 577 F.2d 239, 243 (5th Cir.1978). The Supreme Court rejected any merging of the different standards of liability in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731 (1984).

> The Sherman Act contains a "basic distinction between concerted and independent action." The conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization. It is not enough that a single firm appears to "restrain trade" unreasonably, for even a vigorous competitor may leave that impression.... In part because it is sometimes difficult to distinguish robust competition from conduct with long-run anti-competitive effects, Congress authorized Sherman Act scrutiny of single firms only when they pose a danger of monopolization. Judging unilateral conduct in this manner reduces the risk that the antitrust laws will dampen the competitive zeal of a single aggressive entrepreneur.
>
> Section 1 of the Sherman Act, in contrast, reaches unreasonable restraints of trade effected by a "contract, combination ... or conspiracy" between *separate* entities.... Concerted activity subject to § 1 is judged more sternly than unilateral activity under § 2. Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal *per se* without inquiry into the harm it has actually caused.... [Other] combinations are judged under a rule of reason, an inquiry into market power and market structure designed to assess the combination's actual effect. *Whatever form the inquiry takes, however, it is not necessary to prove that concerted activity threatens monopolization.*

Id. at 767–68, 104 S.Ct. at 2739–40 (emphasis added) (citations omitted *see also Western Concrete Structures Co. v. Mitsui & Co. (U.S.A.), Inc.*, 760 F.2d 1013, 1017 (9th Cir.), *cert. denied*, ⸺ U.S., 106 S.Ct. 230 (1985) ("[S]ection 1 ... requires a conspiracy, but does not require monopolizing or attempting to monopolize.").

This distinction between single firm and concerted conduct necessarily means that the antitrust laws condemn concerted activity that would be perfectly lawful if done by a single firm. Thus, the Supreme Court stated that a conspiracy to fix low prices is *per se* unlawful under Sherman Act Section 1 even when a single firm setting the same price may escape liability under Sherman Act Section 2. *Fisher v. City of Berkeley*, 475 U.S. 260, 106 S.Ct. 1045, 10–49 (1986). (footnote omitted) The district court here, however, ruled that maximum vertical price-fixing requires the § 2 elements of predatory pricing and market power to be anticompetitive and capable of causing antitrust injury. The court's decision directly contradicts the Sherman Act's statutory scheme as well as the substantive case law and must be rejected.

Pages 15–23 of USA's reply brief read as follows:

> monopolization. ARCO Brief at 23. (footnote omitted)

ARCO would have this Court hold that maximum vertical price-fixing is anticompetitive for violation purposes but pro-competitive for antitrust injury purposes. This sort of semantic gymnastics demeans the judicial process. No court has ever suggested that price-fixing should not only not be illegal, but encouraged. Yet this is what ARCO asks this Court to hold.

Antitrust injury analysis was not, however, intended to afford defendants the opportunity to rewrite the antitrust laws. ARCO's unprecedented standard is wholly contrary to Sherman Act's statutory scheme and the authority defining price-fixing as anticompetitive regardless of the

level of price and the absence of actual or threatened monopoly power.

A. *ARCO's Argument that Price–Fixing Must Amount To Predatory Pricing with a Dangerous Probability of Successful Monopolization Squarely Contradicts the Sherman Act's Statutory Scheme.*

ARCO's essential argument is that price-fixing must meet the standards for single firm pricing conduct under Sherman Act § 2. The plaintiff must therefore prove that the defendant fixed "predatory prices" and had a dangerous probability of successfully monopolizing the market. The Supreme Court and Ninth Circuit have rejected this argument as inconsistent with the Sherman Act's statutory scheme.

The Supreme Court in *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731 (1984), expressly held that for § 1 offenses, "it is not necessary to prove that concerted activity threatens monopolization." *Id.* at 767–68, 104 S.Ct. at 2739–40; *see also Western Concrete Structures Co. v. Mitsui & Co. (U.S.A.), Inc.,* 760 F.2d 1013, 1017 (9th Cir.), *cert. denied,* 106 S.Ct. 230 (1985). Specifically, the Court has held that price-fixing has anticompetitive effects even absent the actual or threatened market power required under Sherman Act § 2. *Socony–Vacuum,* 310 U.S. at 224–25 n. 59, 60 S.Ct. at 845 n. 59.

In the context of maximum price-fixing, the Supreme Court has explicitly held that the antitrust laws deem maximum price-fixing anticompetitive even though the same economic effect, when created by unilateral pricing conduct, would be considered procompetitive under Sherman Act § 2. *Fisher v. City of Berkeley,* 106 S.Ct. 1045, 1049 (1986). (footnote omitted). Finding that Berkeley's rent control ordinance constituted unilateral government conduct, the Court did not invalidate the ordinance. *Id.* at 1049–51. The Ninth Circuit followed the *Fisher* holding and rationale in *Miller v. Hedlund,* 813 F.2d 1344, 1349 (9th Cir. 1987). (footnote omitted)

The Supreme Court leaves no doubt that the Sherman Act defines anticompetitive conduct differently for price-fixing and unilateral pricing conduct. For this reason, the Court has rejected the defense that the price-fixing arrangement fixed competitive prices and refused to assume the burden of making that determination. *E.g., Socony–Vacuum,* 310 U.S. at 221–22, 60 S.Ct. at 843; *United States v. McKesson & Robbins, Inc.,* 351 U.S. 305, 309–10, 76 S.Ct. 937, 940 (1946). For this reason, the Court has also held that price-fixing is anticompetitive regardless of the defendant's actual or threatened market power. *Socony–Vacuum,* 310 U.S. at 224–25 n. 59, 60 S.Ct. at 845 n. 59. ARCO's attempt to merge the price-fixing and predatory pricing standards is wholly without support in either the case law or the statutory scheme.

B. *ARCO's Cited Authorities Do Not Support ARCO's Argument that Price–Fixing is Anticompetitive Only When It Satisfies the Standard Applicable to Single Firm Pricing Conduct.*

ARCO does not attempt to distinguish the vast Supreme Court authority holding that price-fixing and unilateral predatory pricing are distinct and separate offenses subject to different definitions of anticompetitive conduct. Instead, with one exception ARCO continues to cite non-price-fixing cases and urge the adoption of predatory pricing and market power requirements applicable to single firm conduct.

Quoting elliptically from this Circuit's opinion in *Murphy Tugboat Co. v. Crowley,* 658 F.2d 1256 (9th Cir.1981), *cert. denied,* 455 U.S. 1018 (1982), ARCO misreads that case to support its proposition that price-fixing must amount to predatory pricing to injure competition. *Murphy Tugboat* actually stands for the opposite proposition. The plaintiff in *Murphy Tugboat* alleged that defendant conspired with its pilot/employees to fix the fees charged to customers for pilot services. The Ninth Circuit held that Murphy could not complain of the defendant's price-fixing, not because it was a competitor, as ARCO argues, but because it was *not* a competitor in the pilot services market. (footnote omitted) 658 F.2d at 1259. This is precisely how the Ninth Circuit has interpreted *Mur-*

*phy Tugboat. See William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1034 n. 27 (9th Cir. 1982), *cert. denied,* 459 U.S. 825 (1982). (footnote omitted)

The only case which appears to merge price-fixing and predatory pricing is *Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698 (7th Cir.), *cert. denied,* 469 U.S. 1018 (1984). As discussed at length in USA's Opening Brief at pp. 26–29, Judge Posner used antitrust injury analysis to circumvent the substantive laws' judgment that maximum vertical price-fixing is anticompetitive. The *Jack Walters* opinion holds simply that maximum vertical price-fixing constitutes procompetitive conduct that cannot cause *any* plaintiff antitrust injury. 737 F.2d at 708–09 (characterizing maximum vertical price-fixing as "lawful price competition").

Even under ARCO's theory, *Jack Walters* was wrongly decided. The plaintiff in *Jack Walters* was a distributor who sued his supplier. ARCO concedes that such a plaintiff, an intrabrand competitor, suffers antitrust injury. ARCO Brief at 17.

Moreover, the *Jack Walters* holding cannot be squared with the per se rule's conclusive presumption that maximum vertical price-fixing is anticompetitive. In response to Judge Posner's failure to reconcile his antitrust injury holding with the per se rule's presumption that the defendant's conduct is anticompetitive, one commentator candidly observed: "I cannot escape the conclusion that Judge Posner—growing impatient with Congress's or the Supreme Court's refusal to overrule *Albrecht*—has decided to undertake that task on his own." Hovenkamp, *Chicago and Its Alternative,* 1986 Duke L.J. 1014, 1026. (footnote omitted).

Nor does the Supreme Court's decision in *Cargill, Inc. v. Monfort of Colorado, Inc.,* 107 S.Ct. 484 (1986), support ARCO's predatory pricing requirement. The plaintiff in *Cargill* alleged that the post-merger entity would engage in a "cost-price squeeze" that would not, however, amount to predatory pricing. The Court held that the anti-trust laws condemn single firm pricing conduct as anticompetitive only when it amounts to predatory pricing. Therefore, absent predatory pricing allegations, the plaintiff could not show antitrust injury. *Id.* at 491–92. The Court did not, however, suggest that it intended to overrule *Copperweld* and adopt a predatory pricing standard for concerted price-fixing. Nowhere in the opinion does the Court even mention price-fixing.

ARCO nevertheless argues that *Cargill's* holding should apply to concerted price-fixing because the antitrust injury requirement applies to all private antitrust damages actions. ARCO Brief at 28–29 ARCO misunderstands antitrust injury analysis. As *Brunswick* makes clear, antitrust injury analysis is not divorced from the substantive antitrust laws. 429 U.S. at 487, 97 S.Ct. at 696. The threshold inquiry is whether the substantive laws condemn the defendant's conduct, the source of the plaintiff's injury, as anticompetitive. *Cargill,* 107 S.Ct. at 491; *Fishman v. Estate of Wirtz,* 807 F.2d 520, 535–36 (7th Cir.1987), *as amended,* 1987–1 Trade Cas. (CCH) ¶ 67,536. The Court's holding in *Cargill* that the plaintiff had not suffered antitrust injury was premised on its specific finding that the defendant's unilateral pricing conduct did not violate the antitrust laws. 107 S.Ct. at 492. This holding cannot have any application to concerted price-fixing, an entirely distinct offense.

Finally, ARCO cites a myriad of non-price-fixing cases to argue that maximum vertical price-fixing does not injure competition unless the defendant has a dangerous probability of successful monopolization. While ARCO acknowledges that the great weight of Supreme Court authority deems maximum vertical price-fixing anticompetitive even when the defendant does not threaten monopoly, ARCO nevertheless argues that market power is required for antitrust injury. ARCO does not cite one case that even suggests that antitrust violations an antitrust injury require different degrees of anticompetitive effect. Antitrust injury analysis merely asks whether the plaintiff's injury is the type of injury

expected to flow from the violation's anticompetitive effects.

The sole § 1 case ARCO cites in support of its threatened monopolization requirement is *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986). The plaintiffs in *Matsushita* alleged that the defendants conspired to allocate markets and price predatorily within their respective territories. Contrary to ARCO's argument that the Court defined predatory pricing as requiring threatened monopolization, the Court expressly declined to define predatory pricing. *Id.* at 1355 n. 8. The Court discussed the costs and benefits of predatory pricing strategies only to determine the quantum of proof necessary to defeat summary judgment as to the existence of a conspiracy. *Id.* at 1356. The Ninth Circuit has recognized that the *Matsushita* decision does not affect the existing definitions of predatory pricing *Marsann Co. v. Brammall, Inc.*, 788 F.2d 611, 615 (9th Cir.1986).

That *Matsushita* did not enunciate any specific requirements, including market power, for predatory pricing was made in the Supreme Court's subsequent decision in *Cargill.* The Court in *Cargill* expressly stated that predatory pricing strategies may occur even when the defendant lacks market power. 107 S.Ct. at 495 n. 15. Certainly, USA should be entitled to show that ARCO, as the dominant supplier of gasoline in the western United States, restrained competition through its maximum price-fixing scheme.

## IV.

## CONCLUSION

As a competitor and direct victim of ARCO's scheme to fix resale prices below the level that would have prevailed in an unrestrained market, USA has clearly suffered antitrust injury.